# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-2052-LPS |
| | ) | |
| KAPSCH TRAFFICCOM IVHS, INC.; | ) | |
| KAPSCH TRAFFICCOM IVHS | ) | |
| HOLDING CORP.; KAPSCH | ) | |
| TRAFFICCOM IVHS TECHNOLOGIES | ) | |
| HOLDING CORP.; KAPSCH | ) | |
| TRAFFICCOM U.S. CORP.; KAPSCH | ) | |
| TRAFFICCOM HOLDING CORP.; and | ) | |
| STAR SYSTEMS INTERNATIONAL, | ) | |
| LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Presently pending in this patent infringement case are: (1) Defendants Kapsch Trafficcom IVHS, Inc., Kapsch Trafficcom IVHS Holding Corp., Kapsch Trafficcom IVHS Technologies Holding Corp., Kapsch Trafficcom U.S. Corp. and Kapsch Trafficcom Holding Corp.'s (collectively "Kapsch" or the "Kapsch Defendants") motion to dismiss Plaintiff Neology, Inc.'s ("Plaintiff" or "Neology") induced, contributory and willful infringement claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) Defendant Star Systems International Ltd.'s ("SSI" and, collectively with Kapsch, "Defendants") motion to dismiss Plaintiff's induced, contributory and willful infringement claims against it, also filed pursuant to Rule 12(b)(6) (collectively with Kapsch's motion to dismiss, the "Motions"). (D.I. 16; D.I. 28) For the reasons set forth below, the Court recommends that Defendants' Motions be GRANTED without prejudice.

## I. BACKGROUND

Plaintiff commenced this action on December 19, 2013, alleging direct, indirect and willful infringement claims against one Defendant, Confidex, Inc. ("Confidex"), concerning U.S. Patent Nos. 6,229,443, 6,690,264, 8,237,568, 8,325,044, 8,587,436 and 7,119,664 (collectively, the "Asserted Patents"). (D.I. 1) Before Confidex responded, Plaintiff filed the First Amended Complaint ("FAC") on February 27, 2014, adding Kapsch and SSI as Defendants. (D.I. 4) The FAC now accused all Defendants (that is, Confidex, Kapsch and SSI), respectively, of infringement of each of the six Asserted Patents. (*Id.*)[1] In the FAC, Plaintiff alleges that the infringing products at issue (the "Accused Products") are Radio Frequency Identification ("RFID") transponders and/or readers, which "comprise at least the following products: (1) Confidex License Plate Tag product[;] (2) Confidex Windshield Label product[;] (3) SSI's Venus Windshield Decal (collectively, the 'Accused Transponder Products')[;] (4) Kapsch JANUS Multiprotocol Reader[;] and (5) SSI's Vela High Performance USB RFID Desktop Reader (collectively, the 'Accused Reader Products')." (*Id.* at ¶ 19)

Kapsch filed its instant motion to dismiss, in lieu of an Answer, on April 21, 2014. (D.I. 16) On May 20, 2014, that motion was referred to the Court for resolution by Chief Judge

---

[1]     The six Counts of the FAC, which in turn contain infringement allegations as to each of the six Asserted Patents, contain relatively similar language. Four of the six Counts (all but Counts III and V) allege direct infringement by all Defendants of the respective patents listed in those counts; Count III (relating to the '568 patent) does not allege direct infringement of that patent against any Defendant and Count V (relating to the '436 patent) alleges direct infringement of that patent against only Kapsch. (D.I. 4) All six counts allege induced, contributory and willful infringement by all Defendants as to all six Asserted Patents. (*Id.*) As to the indirect and willful infringement allegations, at issue here, the Counts differ mainly in listing the identifying information for each Asserted Patent, and in describing the alleged dates and nature of Defendants' pre-suit knowledge. (*Compare id.* at ¶¶ 15-33, *with id.* at ¶¶ 34-48) To the extent the Court cites below only to the allegations as to one of the six Asserted Patents, it does so in an effort to address Plaintiff's allegations regarding the same type of claim against that particular Defendant relating to each of the other Asserted Patents.

Leonard P. Stark. (D.I. 24) On May 30, 2014, SSI filed its instant motion to dismiss, in lieu of an Answer, (D.I. 28); Chief Judge Stark referred that motion to the Court for resolution on June 27, 2014, (D.I. 34).

On June 5, 2014, Plaintiff dismissed its claims against Confidex, leaving Kapsch and SSI as the remaining Defendants in the case. (D.I. 31)

## II. STANDARD OF REVIEW

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

3

## III. DISCUSSION

As noted above, the Motions allege that Plaintiff has insufficiently pleaded claims of induced, contributory and willful infringement. The Court will consider these arguments in turn.[2]

### A. Induced Infringement

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." In order to prove induced infringement, the patentee "must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, a patentee must plead facts "plausibly showing that [the alleged infringer] specifically intended [a third party] to infringe the [patents-in-suit] and knew that the [third [party's] acts constituted infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *see also Versata Software, Inc. v. Cloud9 Analytics, Inc.*, Civil Action No. 12-925-LPS, 2014 WL 631517, at *2 (D. Del. Feb. 18, 2014), *report and recommendation adopted*, 2014 WL 1091751 (D. Del. Mar. 14, 2014).

#### 1. Knowledge that direct infringer's acts constituted infringement

Defendants first claim that the FAC fails to adequately plead induced infringement because it fails to allege facts plausibly showing that Defendants had knowledge that the alleged

---

[2] As was also previously noted, the FAC alleges direct infringement by Defendants as to certain of the Asserted Patents. (D.I. 4 at ¶¶ 19, 38, 67, 82, 97) In their Motions, Defendants do not directly challenge the sufficiency of the direct infringement allegations. (*See, e.g.*, D.I. 21 at 1; D.I. 32 at 1) Thus, the Court's decision here addresses only the claims of induced, contributory and willful infringement.

4

direct infringer's acts constituted infringement.³ *See Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2013 WL 2295344, at *1 (D. Del. May 24, 2013) (citing *In re Bill of Lading*, 681 F.3d at 1339). While a plaintiff need not "prove its case at the pleading stage[,]" what is required is that the facts pleaded, "when considered in their entirety and in context, lead to the common sense conclusion that a patented method is being practiced." *In re Bill of Lading*, 681 F.3d at 1339, 1343. The Court will assess this charge as to the respective Defendants below.

### a. Kapsch

The Court concludes that the FAC does not allege enough facts to state a claim for pre-suit induced infringement against Kapsch. The FAC fails to sufficiently allege that before the

---

³ Kapsch actually leads with an additional argument as to why the induced infringement claims are wanting, asserting that Plaintiff has failed to "'plead[] facts sufficient to allow an inference that at least one direct infringer exists.'" (D.I. 17 at 7 (quoting *In re Bill of Lading*, 681 F.3d at 1336)) Kapsch's argument is, in essence, that: (1) because the indirect infringement claims at issue involve generic assertions that "Defendants" have induced infringement and that "their customers" are the direct infringers; and (2) the Defendants referenced in the FAC are at "different levels of the supply chain[,]" engage in different business activities and sell different products; then (3) Kapsch cannot determine "whether the allegations refer to . . . Confidex's customers, SSI's customers, Kapsch's customers, or some combination thereof[.]" (*Id.* at 8) Identification of a specific third-party direct infringer is not required to survive a motion to dismiss, so long as the allegations are sufficient to allow the inference that there is at least one such direct infringer. *In re Bill of Lading*, 681 F.3d at 1336; *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 394 (D. Del. 2013). The FAC's lumping together of "Defendants" is surely problematic, as will be addressed further in this Report and Recommendation. But this type of conflation is of greater concern when it comes to parsing what each Defendant is said to have done regarding the other elements of an inducement claim. As to identification of a direct infringer, here, the allegations can be fairly read to assert that customers of *both* Kapsch and SSI (that is, persons or entities that have purchased certain of the Accused Products from those Defendants) are said to be the direct infringers. (D.I. 4 at ¶ 29; *see also id.* at ¶¶ 14, 19-21 (describing how, *inter alia*, SSI and Kapsch are alleged to sell certain accused products to their customers)) Since Plaintiff pleaded that Defendants indirectly infringe by "such customers making, using, offering to sell, and/or selling at least the Accused Products," the requirement for pleading facts that allow an inference that at least one direct infringer exists would be met here. (*Id.* at ¶ 29)

5

Kapsch Defendants received the initial Complaint, they had knowledge that the Accused Products infringed the Asserted Patents or of how they did so.

The Court acknowledges that the FAC does allege that, as to each of the Asserted Patents, since at least November 2013, "Neology provided to Kapsch, or Kapsch's agents and representatives, numerous memoranda and presentations detailing Neology's analysis and/or description of its intellectual property (including issued patents and pending patent applications [specifically including each of the Asserted Patents]), and how Neology's intellectual property covered the RFID technology accused of infringement in this case."[4] (D.I. 4 at ¶ 25) These allegations do at least plausibly assert that Kapsch had pre-suit knowledge of the Asserted Patents, and indicate that there were some detailed discussions between Neology and Kapsch as to the general subject of alleged infringement of the Asserted Patents.

However, the allegations otherwise contain no factual specificity as to *how* it was said that Kapsch's technology infringed the Asserted Patents, or could be used by customers to infringe Neology's intellectual property. Nor do they contain any specific facts articulating how or why Kapsch would have or should have understood that the "RFID technology" discussed in those communications included the types of Kapsch products that are accused of infringement here.

In its briefing, Plaintiff claims that the FAC "describes the substance of the notice it gave to Kapsch" and provides "detailed allegations regarding . . . how [the patents-in-suit] covered the RFID technology accused of infringement." (D.I. 21 at 9, 16) If that were true—if the FAC had

---

[4] The FAC references communications occurring between June 2010 and November 2013. (*See, e.g.*, D.I. 4 at ¶¶ 25-27)

6

provided any real factual specificity ("detailed" or otherwise) about the substance of this notice of infringement—the result here might well be different. But instead, in these paragraphs, the FAC simply refers to the notice at issue in conclusory, "take my word for it" terms: that these pre-suit communications referenced "how Neology's intellectual property covered the RFID technology accused of infringement[.]"[5] (*See, e.g.*, D.I. 4 at ¶ 25); *cf. Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 6044793, at *15 (D. Del. Nov. 13, 2012) (concluding that there were insufficient facts alleged to support the plausible inference that defendant had pre-suit knowledge that its users' actions constituted infringement of the asserted patents, where plaintiff generally asserted that it provided defendant with "written notice of its infringement" but alleged "no facts . . . regarding the substance of that notice[,]" leaving the court "to speculate as to what it was about that notice that could have plausibly provided [defendant] with the requisite knowledge of its users' infringement") (internal quotation marks and citation omitted) (citing cases), *report and recommendation adopted*, 2013 WL 2295344 (D. Del. May 24, 2013).

If the FAC itself contained any further indication as to how it is that Kapsch's customers' use of the Accused Products (or of Kapsch technology similar to the Accused Products) was said to infringe the Asserted Patents, there might be enough for the Court to infer that this particular subject matter was what was discussed in these pre-November 2013 memoranda and

---

[5] On this point, the Kapsch Defendants assert in their briefing: "It is noteworthy and not inadvertent that Neology's complaint never alleges that any of the Accused Products in this case were discussed or disclosed in Neology's presentations and memoranda nor otherwise accused of infringement prior to this suit being filed. Accordingly, Neology provides no allegation that Kapsch would have knowledge that its alleged actions of selling or re-selling Confidex or SSI products or selling Kapsch products would induce infringement by customers." (D.I. 17 at 10; *see also* D.I. 23 at 4-5)

presentations. But there is not. And not only does the FAC include nothing more on those fronts, but when it gets to further discussion of the alleged indirect infringement at issue, it makes blanket reference to all "Defendants" generically as having "indirectly infringed the [Asserted Patents] by actively and intentionally inducing their customers to infringe the [Asserted Patents.]" (D.I. 4 at ¶ 29) These kinds of allegations, specific to no Defendant and generic as to all, are unhelpful in further flushing out a facially plausible claim of Kapsch's pre-suit knowledge. *Cf. Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [the] minimum standard" that "a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.") (internal quotation marks and citations omitted).

For all of these reasons, the Court cannot plausibly infer that Kapsch had enough information prior to suit to know that its customers' acts constituted infringement of the Asserted Patents. *See Bonutti Skeletal Innovations LLC v. Smith & Nephew, Inc.*, Civil Action No. 12-1111-GMS, 2013 WL 6058472, at *1 n.5 (D. Del. Nov. 18, 2013) ("Allegations that [defendant] knew of [plaintiff's] patents and of its customers' use of [defendant's] products do not suffice to establish that [defendant] also knew that its customers' use of [defendant's] own products would amount to infringement of [plaintiff's] patents.").

As to post-suit knowledge, the result is no different. Although the Accused Products were identified in the Complaint and in the FAC, neither document sets out factual allegations regarding how these products are said to infringe the Asserted Patents when utilized by the respective alleged direct infringers. If there are insufficient allegations in the FAC of pre-suit

8

knowledge of infringement, nothing in the pleadings gave Kapsch any additional post-suit notice as to this element. *See Versata Software, Inc.*, 2014 WL 631517, at *3-4 (recommending dismissal of induced infringement claims where complaint did not "plausibly assert[] [d]efendant's [post-suit] knowledge that the end users' acts constituted infringement of the patents-in-suit[,]" as though a plaintiff need not "provide a detailed, step-by-step description of the alleged infringement in the complaint, this Court has required some identification of how it is that use of the accused product infringes the patent, in order to plausibly assert that the indirect infringer knew that the downstream use of its products constitutes patent infringement").

Lastly, Plaintiff also does not adequately allege facts sufficient to show that Kapsch was willfully blind to the possibility that its actions induced infringement. To plead willful blindness, a plaintiff must identify affirmative actions taken by the defendant to avoid gaining knowledge of the patents-in-suit or of acts that constituted patent infringement. *See MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 230 (D. Del. 2012). The FAC makes only passing references to willful blindness, (*see, e.g.*, D.I. 4 at ¶ 29), and the nature of what is alleged therein does not really seem intended to track this type of a theory, (*see, e.g., id.* at ¶¶ 25-28; *see also* D.I. 23 at 6-7).

### b. SSI

The FAC's induced infringement allegations regarding knowledge are deficient as to SSI first for a reason not applicable to the claims against Kapsch—the FAC does not sufficiently allege that SSI had pre-suit knowledge of the patents-in-suit.[6] To that end, Plaintiff alleges that

---

[6] Were Plaintiff to file a further Amended Complaint asserting indirect infringement against SSI, SSI obviously would have had knowledge of the patents-in-suit as of the date of the filing of the FAC.

SSI had pre-suit knowledge as to three of the six patents (the '568 patent, the '044 patent, and the '436 patent) because: (1) in July 2011, Plaintiff filed a patent infringement suit in this Court against Sirit Corp. ("Sirit") and Federal Signal Technologies, LLC ("FSTech"); (2) that suit involved allegations of infringement of patents that share a specification with the '568, '044 and '436 patents; (3) SSI was formed by former Sirit and FSTech employees (who are unnamed in the FAC); and (4) thus, "[a]ll of Sirit's and FSTech's employees [including those who now work for SSI] were put on notice" of the '568, '044 and '436 patents, due to the fact of the prior Sirit/FSTech suit. (D.I. 4 at ¶¶ 28, 57, 87) As to the '443 patent and the '264 patent, the FAC states that Plaintiff asserted these particular patents against Sirit and FSTech in the July 2011 suit, and states that Plaintiff asserted the remaining '664 patent against those entities in a May 2012 action in the United States District Court for the Central District of California. (*Id.* at ¶¶ 43, 72, 102) Since SSI was thereafter created by (unnamed) "former Sirit and FSTech employees[,]" Plaintiff alleges that all of SSI's employees must have had pre-suit knowledge of these three patents as well. (*Id.* at ¶¶ 43, 72, 102)

The Court finds these allegations insufficient to make out a plausible claim that SSI had pre-suit knowledge of the six Asserted Patents. The FAC contains no allegation as to any particular SSI employee who formerly worked at Sirit or FSTech, nor about whether any such person was involved with or knowledgeable about the infringement allegations at issue in the Sirit and FSTech cases. Nor are there allegations, for example, about the size of Sirit or FSTech on the one hand and SSI on the other—i.e., allegations that might allow the plausible inference that *any* former (even unnamed) Sirit or FSTech employee who later created SSI would necessarily have had to be aware of the patents at issue in the prior Sirit/FSTech cases. *Cf.*

10

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*, — F. Supp. 2d —, C.A. No. 13-412-LPS, 2014 WL 1217263, at *2-3 (D. Del. Mar. 21, 2014) (finding as to willful infringement claim that the plaintiff had "not pled sufficient facts to successfully allege [defendant's] pre-suit knowledge of the patents-in-suit[,]" despite its allegation that defendant's in-house intellectual property counsel previously worked for a third party company that then owned the patents-in-suit, and was responsible for marketing that third party's patents to the plaintiff).

Additionally, Plaintiff has not sufficiently pleaded SSI's knowledge that its customers' acts constituted infringement. On this issue, there are even fewer facts pleaded in the FAC as to SSI than there were regarding Kapsch. Here, in the relevant paragraphs of the FAC, Plaintiff appears to assert that because it had previously accused two different companies (Sirit and FSTech) of infringing certain Asserted Patents (or patents related to the Asserted Patents) via the use of different, non-SSI products (i.e., Sirit or FSTech products)—this provided *SSI* with sufficient knowledge as to how *SSI's customers* would later infringe the patents-in-suit via the use of *SSI's products*. (D.I. 4 at ¶¶ 28, 43, 57, 72, 87, 102; *see also* D.I. 32 at 9-11) There are no further factual allegations in the FAC relating to SSI's knowledge of its customers' alleged infringing conduct. Instead, all that remains in the FAC is the bald statement that "Defendants" induced their customers to infringe "with knowledge that the inducted acts constituted infringement." (*See, e.g.*, D.I. 4 at ¶ 29) The Court cannot conclude that such exceedingly broad allegations set out a plausible claim as to this element of induced infringement. *See ReefEdge Networks, LLC*, 2014 WL 1217263, at *2-3 (finding that plaintiff had failed to plead facts demonstrating that defendant's in-house intellectual property counsel, whose prior knowledge of the patents was said to be imputed to defendant, had any knowledge that defendant was

infringing the patents-in-suit, where there were no allegations that the in-house counsel was aware of defendant's allegedly infringing products).

### 2. Specific intent to infringe

A plaintiff must also allege facts to allow for the plausible inference that the indirect infringer had the specific intent to induce infringement by the direct infringer (that is, that the indirect infringer *encouraged* the direct infringement). *See Pragmatus AV, LLC*, 2013 WL 2295344, at *1; *see also Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1292-93 (Fed. Cir. 2008) ("Thus, 'inducement requires evidence of culpable conduct, *directed to encouraging* another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'") (emphasis added) (citation omitted).

Neology does not adequately plead specific intent as to its claims against all Defendants. First, absent sufficient factual allegations as to how the Accused Products are said to infringe the patents-in-suit, assertions that a defendant provided unspecified "training and instructions to [its] customers concerning the use of the Accused Products" are not specific enough to allege the requisite encouragement. (*See, e.g.*, D.I. 4 at ¶ 29) In such a circumstance, this type of allegation simply begs the question: "Provided 'training and instructions' as to what?" *See McRo, Inc. v. Rockstar Games, Inc.*, Civil Action Nos. 12-1513-LPS-CJB, 12-1517-LPS-CJB, 12-1519-LPS-CJB, 2014 WL 1051527, at *6 (D. Del. Mar. 17, 2014) (recommending grant of motion to dismiss for failure to properly alleged induced infringement, on the grounds that without further allegations about how the alleged direct infringer's action amounted to infringement, the complaint's generic reference to the alleged indirect infringer's "'dissemination of instructional materials'" failed to sufficiently articulate how patent infringement was being encouraged by

these means) (internal citation omitted), *report and recommendation adopted,* 2014 WL 1677366 (D. Del. Apr. 24, 2014); *MONEC Holding AG*, 897 F. Supp. 2d at 234 (finding that allegations that defendants engaged in "selling, advertising, supplying and instructing its respective customers on the use of the infringing product" were insufficient to establish that defendants "knew such activities were infringing or that [they] possessed the specific intent to encourage another's infringement").

Second, Plaintiff's decision to lump all Defendants together when articulating certain of its inducement allegations becomes particularly problematic here. The FAC fails to identify what "training and instructions" are being referred to in the Counts, or even which particular Defendant or Defendants are said to have disseminated the training or instructional materials at issue. Kapsch, SSI and former Defendant Confidex all conduct different business activities, sell different products and presumably utilize different types of "training and instructions" in the course of their business. Treating these Defendants as one big group for purposes of articulating how each has encouraged the induced infringement at issue says nothing plausible as to what any particular one of them might have done.

### B. Contributory Infringement

Under 35 U.S.C. § 271(c), a patentee must demonstrate that an alleged contributory infringer has sold, offered to sell or imported into the United States a material or apparatus for use in practicing a patented process "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." *See also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). Therefore, similar to inducement, Section 271(c)

13

requires a showing that an "'alleged contributory infringer knew that the combination for which [its] component was especially designed was both patented and infringing.'" *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

Plaintiff cannot state a claim for contributory infringement without sufficiently alleging that Defendants had knowledge that their customers' actions constituted infringement of the patents-in-suit. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011); *Walker Digital*, 852 F. Supp. 2d at 566-67.[7] For at least the reasons set forth above—namely that Plaintiff did not adequately allege Defendants' knowledge of how the Accused Products are used by their customers to infringe the patents-in-suit—Plaintiff fails to state a claim as to contributory infringement of the patents-in-suit.[8]

---

[7] Plaintiff's allegations of contributory infringement are muddied a bit by the fact that the FAC asserts that it is alleging induced infringement, willful infringement "and/or [that Defendants] contributed to infringement by one or more [of] their customers[.]" (*See, e.g.*, D.I. 4 at ¶ 29) This Court generally disfavors the use of the phrase "and/or" in pleading indirect infringement because it detracts from providing "a clear indication as to whether a plaintiff intends to plead induced infringement, contributory infringement or both." *Pragmatus AV, LLC*, 2012 WL 6044793, at *13 n.5.

[8] Plaintiff additionally fails to plead facts, *inter alia*, indicating that Defendants' products were "not a staple article or commodity of commerce suitable for substantial non-infringing use." *See E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, Civ. Action No. 11-773-SLR-CJB, 2012 WL 4511258, at *8-9 (D. Del. Sept. 28, 2012). Here, the FAC simply recites this element and does no more, (*see, e.g.*, D.I. 4 at ¶ 30), and in its briefing, Plaintiff does not explain how any facts are pleaded that relate to the element, (D.I. 32 at 13-14). *See In re Bill of Lading*, 681 F.3d at 1337-38 (disagreeing with plaintiff's argument that it sufficiently pleaded contributory infringement when it alleged that "as customized" the defendants' products had no substantial non-infringing use); *3D Sys., Inc. v. Formlabs, Inc.*, No. 13 Civ. 7973, 2014 WL 1904365, at *6 (S.D.N.Y. May 12, 2014) (finding that "no facts or allegations are pled that plausibly support an inference that there are no substantial noninfringing uses of the [accused product] especially since the [c]omplaint does not provide any allegations as to how the [accused product] infringes the patents-in-suit").

## C. Willful Infringement

To prove a case of willful infringement, a patent owner must demonstrate by clear and convincing evidence that the infringer acted despite an "objectively high likelihood that its actions constituted infringement" and that this "objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). At the pleading stage, a plaintiff must plead facts giving rise to at least a showing of objective recklessness regarding the infringement risk. *See, e.g., IpVenture Inc. v. Lenovo Grp. Ltd.*, Civil Action No. 11-588-RGA, 2013 WL 126276, at *2 (D. Del. Jan. 8, 2013); *MONEC Holding AG*, 897 F. Supp. 2d at 236; *St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*, C.A. No. 10-425-LPS, 2012 WL 1134318, at *2 (D. Del. Mar. 28, 2012).[9] It is not necessary to plead actual knowledge of infringement or the infringement risk, but the complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendant. *MONEC Holding AG*, 897 F. Supp. 2d at 236; *Hewlett-Packard Co.*, 2012 WL 1134318, at *2-3. And ultimately, the "complaint must 'demonstrate[] a link between the various allegations of knowledge of the patents-in-suit and the allegations that the risks of infringement' were either known or were so obvious that they should have been known." *MONEC Holding AG*, 897 F. Supp. 2d at 236 (quoting *Hewlett-*

---

[9] *See also Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*, C.A. No. 10-502-LPS, 2012 WL 3069390, at *3 (D. Del. July 27, 2012) (noting that in order to plead a claim of willful infringement, a plaintiff must meet the requirements of Rule 8 and Rule 11(b) of the Federal Rules of Civil Procedure, and must provide a "pleading equivalent to 'with a knowledge of the patent and of his infringement'") (internal quotation marks and citation omitted); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, Civil Action No. 11-1175-RGA, 2012 WL 6968938, at *2 (D. Del. July 18, 2012) (facts alleged regarding willfulness claim must meet *Iqbal* plausibility standard).

*Packard Co.*, 2012 WL 1134318, at *3).[10]

In *St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*, C.A. No. 10-425-LPS, 2012 WL 1134318, at *2 (D. Del. Mar. 28, 2012), this Court found that a complaint alleging willful infringement sufficiently set out this requisite link by "listing explicit instances where [the defendant] was aware of both the patents-in-suit and that it was either practicing or contemplating practicing technologies related to the patents-in-suit." *Hewlett-Packard Co.*, 2012 WL 1134318, at *3. In other cases in this Court where willful infringement has been deemed sufficiently pleaded, similarly robust factual allegations were made. *See, e.g., Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 778-79 (D. Del. 2013) (finding willful infringement sufficiently pleaded where the complaint at issue contained facts indicating how the defendant's customers use of the accused products would infringe the relevant patent-in-suit, alleged that the defendant had knowledge of the patent, and alleged that the defendant had knowledge of the aforementioned infringing uses by its customers); *Hand Held Prods., Inc. v. Amazon.com, Inc.*, C.A. No. 12-CV-00768-RGA-MPT, 2013 WL 507149, at *7 (D. Del. Feb. 6, 2013) (finding willful infringement allegations sufficiently pleaded where the plaintiff pleaded facts demonstrating not only that defendants had prior knowledge of the patent-in-suit, but also facts indicating why defendants' mobile applications infringe, and thus why "once aware [of the patent], it was obvious their mobile applications risked infringement because those applications use a smartphone to capture, read, and decode barcodes").

---

[10] Where, as here, a plaintiff has not sought a preliminary injunction, its willfulness claim must at least be based in part on the accused infringer's pre-filing conduct and cannot be based solely on post-filing conduct. *See Softview LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *8 (D. Del. July 26, 2012) (citing *In re Seagate*, 497 F.3d at 1374).

Here, Plaintiff's assertions that Defendants engaged in willful infringement comes in a series of one-sentence paragraphs with little elaboration. (*See, e.g.*, D.I. 4 at ¶ 32) But in each case, the claims of willfulness appear meant to refer back for support to the substance of the FAC's allegations regarding Defendants' asserted pre-Complaint (i.e. June 2010 through November 2013) knowledge of the patents-in-suit. (*See, e.g., id.* at ¶¶ 25-28; *see also* D.I. 21 at 16-17)

As to Kapsch, these allegations sufficiently assert that the patents-in-suit were called to Kapsch's attention prior to the filing of the Complaint. However, the Court agrees with Defendants that the FAC fails to "demonstrate a link between the allegations of knowledge and the allegations that the risks [of infringement] were known or obvious." (D.I. 17 at 14) Unlike the more factually robust allegations at issue in *Hewlett-Packard Co., see id.,* 2012 WL 1134318, at *3 (citing to the content of paragraphs 22-23 of the complaint-at-issue there), here the FAC pleads insufficient factual matter regarding the nature of the prior communications between Plaintiff and Kapsch, particularly as to how the "RFID technology" referenced in those communications is or was said to infringe the patents-in-suit. Thus, these allegations do not do the job of plausibly demonstrating why Kapsch thereafter was being objectively reckless as to the risk of infringement when it, *inter alia*, subsequently sold the Accused Products to its customers.

As to SSI, the allegations are even more wanting. As was set out with regard to the induced infringement claims above, the FAC's allegations: (1) do not make out a sufficiently plausible claim as to SSI's pre-suit knowledge of the Asserted Patents necessary for a willful infringement claim here; (2) do not otherwise plausibly demonstrate how any particular SSI employee might have had knowledge that SSI's products (as opposed to Sirit and FSTech's

17

products) were infringing the patents-in-suit.

## IV. Conclusion

For the foregoing reasons, the Court recommends that Defendants' Motions be GRANTED. It is within the Court's discretion to grant leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Because amendment should be allowed "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), and because it is not clear that amendment would cause undue prejudice or would be futile (indeed, Defendants do not specifically argue that it would), the Court recommends that Plaintiff be given leave to file a further amended complaint addressing the deficiencies outlined above. *See, e.g., Pragmatus AV, LLC*, 2013 WL 2295344, at *2.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: September 19, 2014

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE